*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALEXA WARD,

        Plaintiff-Appellant,

v

MISTY FARM, LLC, MISTY VALLEY, LLC, and
FRUTIG FARMS,

        Defendants-Appellees.

UNPUBLISHED
September 22, 2022

No. 358544
Washtenaw Circuit Court
LC No. 20-000873-NO

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

Plaintiff, Alexa Ward, appeals as of right the trial court's order granting summary disposition in favor of defendants, Misty Farm, LLC, Misty Valley, LLC, and Frutig Farms (collectively, "defendants"), in this premises liability action, arising out of injuries she sustained when she tripped and fell at Misty Valley, an event venue. We affirm.

## I. BACKGROUND

This case arose from Ward falling during a June 1, 2019 wedding reception at a barn-turned-event venue owned by Misty Valley.[1] The wedding ceremony occurred outside the barn, but the reception and dinner were held in the barn. Ward fell when the heel of her high-heeled shoe caught in one of many cracks in the concrete floor of the barn. She was returning to the dining table from the buffet line when her right foot caught in a crack causing her to twist her ankle and fall.

Ward was wearing four-inch heels when she fell. She had stumbled four or five times during the ceremony, which was held outside. There was no evidence of other individuals who

---

[1] According to defendants, Misty Farms is a separate event venue whose property, located a half mile from Misty Valley, is not at issue in this case. And Frutig Farm is not a legal entity, but a name that defendants used at times in marketing for the two event venues.

tripped, lost footing, or fell during the event, but an exhibit to the motion for summary disposition depicted several wedding guests wearing flats or going barefoot during the reception.

Ward acknowledged that she noticed cracks in the concrete in other areas of the barn floor. She described the crack that caused her fall as a "crevice" that widened where bigger chunks of concrete had broken out. She testified that she did not notice the crack, in part, because there were cracks everywhere. Photographic exhibits depicting the floor without table arrangements show numerous easily identifiable cracks. Although she did not notice the crack that caused her fall, she admitted that there was nothing obstructing her view or preventing her from noticing it. At the time she fell there was natural lighting coming into the barn. She described the lighting inside the barn as "fine" or "good" and that there was nothing obstructing her view. At the time she fell, there were no tables obstructing her view of the crack. Her father identified the crack almost immediately after she fell.

Ward sued defendants alleging three counts: (1) premises liability, (2) negligence, and (3) nuisance. Ward's premises liability claim alleged that defendants breached their duty to protect Ward, an invitee, from conditions on the premises that presented an unreasonable risk of harm; had notice that the cracks were likely to cause injury; and knew or should have known that the cracks were not clearly visible to attendees.

Defendants answered the complaint and asserted several affirmative defenses. Critically, defendants asserted that the premises liability claim was barred because the alleged hazard was open and obvious, and no special circumstances existed. Defendants also claimed Ward could not maintain a common-law negligence claim where it was properly a premises liability claim. Finally, defendants claimed the circumstances alleged did not qualify as a nuisance.

After filing their answer, defendants moved for summary disposition under MCR 2.116(C)(8) and (10). Defendants argued that Ward's premises liability claim should be dismissed because the crack in the pavement was open and obvious, and Ward could not prove notice of a hazard. They also argued that a crack in pavement did not pose an unreasonable risk of harm, so they had no duty to protect Ward from the crack. Defendants' motion relied on Ward's testimony that she saw cracks throughout the venue, was not looking where she was walking when she fell, and nothing obscured her ability to see the cracks. Defendants also argued that Ward failed to plead or prove that, even if the condition was open and obvious, special aspects of the condition precluded summary disposition. Defendants argued the cracked concrete did not present a risk of death or serious harm, and it was not unavoidable. Defendants also noted that Ward denied having evidence that Misty Valley knew the floor was unsafe before she fell and, thus, she could not establish that Misty Valley had notice of a defect. Regarding Ward's negligence claim, defendants argued Ward could not pursue a claim of negligence where the claim sounded in premises liability.

Defendants also argued that the court should dismiss Ward's nuisance claims for failing to raise a genuine issue of material fact as to either public or private nuisance. Regarding private nuisance, defendants argued that Ward did not own property at issue in this case, defeating her private nuisance claim. Regarding public nuisance, defendants argued that the crack in concrete did not interfere with the public's right to use and enjoy the venue.

Ward responded, arguing that Misty Valley owed her, as an invitee, a duty to warn her of unreasonable risks of harm, and that the cracks in the barn's foundation posed an unreasonable risk of harm "when half of the invitees are known and encouraged to wear high-heeled shoes." She also asserted the crack was obscured because the area in which she walked was "elevated," dimly lit, and covered with tables, chairs, and other guests. Ward argued that she could establish that Misty Valley knew of the condition of the premises because of "online reviews or actual complaints from past customers[.]" Ward also argued that the because Misty Valley's caterers directed foot traffic around the buffet line, her only alternatives to prevent her fall were to "either not attend her cousin's wedding or forego dinner." She asserted that neither alternative was reasonable; therefore, the crack in the concrete "ha[d] a special aspect due to its effective unavoidability." Ward's response did not include any substantive argument or authority for her negligence claim or her nuisance claim. Defendants filed a reply arguing that Ward raised no dispute regarding the nuisance claim and reiterated arguments for dismissal of the complaint.

The trial court held a hearing on defendants' motion for summary disposition. The parties argued consistent with their briefs. At the end of the hearing, the court granted defendants' motion, stating that this was "one of the clearest cases I've seen for a premises liability on a motion for summary disposition." The trial court stated that Ward, like other invitees, had a duty to care for her own safety, noting that the "dairy farm floor ha[d] very obvious cracks" that were open and obvious. Although the court did not directly address the special circumstances argument, it attributed Ward's fall to her own lack of care and choice of shoes, noting options of wearing other shoes or going barefoot. The trial court also appeared to agree with defendants' argument that the case sounded in premises liability, not negligence. The day after the hearing, the trial court entered an order granting defendants motion for the reasons it placed on the record. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. (emphasis omitted). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *El-Khalil,* 504 Mich at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

### A. OPEN AND OBVIOUS

Ward argues that the trial court erred when it found that the crack in the concrete foundation was open and obvious and, therefore, it should have denied defendants' motion for summary disposition. We disagree. The trial court correctly granted summary disposition of Ward's premises liability claim because there was no genuine issue of material fact regarding whether the crack in the concrete foundation was open and obvious.

To establish a premises liability claim, an invitee "must show that the premises owner breached its duty to the invitee and that the breach constituted the proximate cause of damages suffered by the invitee." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016). "[A] landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harmed posed by dangerous conditions on the owner's land." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). "[A] breach of this duty of ordinary care [occurs] when the premises possessor knows or should know of a dangerous condition of the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id*.

A landowner, however, has no duty to warn an invitee of an "open and obvious" danger. *Hoffner*, 492 Mich at 460; see *Novotney v Burger King Corp*, 198 Mich App 470, 473; 499 NW2d 379 (1993) ("[T]here is no duty to warn of open and obvious dangers . . . ."). "[S]uch dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner*, 492 Mich at 461. A condition is open and obvious if "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. The inquiry is an objective one that "call[s] for an examination of the objective nature of the condition of the premises at issue." *Id*. (quotation marks and citation omitted); see also *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 524; 629 NW2d 384 (2001) (indicating that whether a condition is open and obvious depends "on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff."). Even so, subjective evidence is relevant when evaluating whether there exists a genuine issue of material fact regarding the condition that existed at the time. *Bialick v Megan Mary, Inc*, 286 Mich App 359, 363 n 2; 780 NW2d 599 (2009).

Here, there was no genuine issue of material fact regarding the nature of the crack in the concrete foundation. It is reasonable to expect that an average person of ordinary intelligence would have discovered the crack at issue upon casual inspection. See *Hoffner*, 492 Mich at 461. The crack at issue was immediately visible after Ward fell—her father pointed it out to her. Ward testified that although she was not aware of the specific crack at issue until after she fell, she acknowledged that cracks in concrete are a common occurrence and that she saw cracks in the concrete in other areas of the barn. Ward testified that she could have "[p]ossibly" seen the crack at issue had she been looking at the floor while she walked. Cf *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 714; 737 NW2d 179 (2007) (concluding that crushed grapes on a grocery store were open and obvious and noting the "[p]laintiff's own deposition testimony establishes that he would have noticed the potentially hazardous condition had he been paying attention."). When asked why she would have possibly seen the crack, Ward stated that there were "cracks everywhere," though she was "not sure if [she] would have noticed" the specific crack that

-4-

caused her fall. The fact that Ward saw cracks all across the floor in the barn, and admitted that she was not looking at the floor while she walked before she fell, demonstrates that she could have noticed the potentially hazardous condition had she been paying attention to the area where she was walking just before she fell. See *id*.

Further, Ward's assertions on appeal and in her response to the motion for summary disposition that the crack was obscured by wedding décor, other attendees, or bad lighting, do not create a question of fact because they are contradicted by her on testimony. Specifically, Ward denied that there was anything preventing her from noticing the crack and admitted that nothing obscured or covered the area or her view. "[A] party may not create an issue of material fact merely by contradicting his or her own deposition testimony." *Kennedy*, 274 Mich App at 714. And regardless of whether Ward was actually unaware of the crack until after she fell, the inquiry, as defendants point out, is objective and asks whether "an average person with ordinary intelligence would have discovered" the crack "upon casual inspection." *Hoffner*, 492 Mich at 461. The evidence—most notably, Ward's own testimony—demonstrates that the crack would have been discovered upon casual inspection by an average person with ordinary intelligence.

The same is true for Ward's assertion that dim lighting obscured her view. Ward relies on photographic exhibits that appear to show dim lighting in the barn. The record does not establish what time of day the photographs depict, and other of Ward's photographs appear to show a well-lit dance floor, seemingly later in the evening the night she fell. Again, Ward's own testimony contradicts her argument. Ward testified that the lighting at the venue was "fine" and "good," and that "nothing [was] necessarily obstructing [her] view." Ward also stated that it was "still sunny" outside when she fell, indicating it was "probably later in the afternoon." Ward cannot create a question of fact by simply contradicting her own deposition testimony. See *Kennedy*, 274 Mich App at 714. Accordingly, the lighting at the venue did not create a question of fact regarding the open and obvious nature of the cracked foundation. The trial court did not err when it granted summary disposition of Ward's premises liability claim based on the open and obvious doctrine.

## B. SPECIAL ASPECTS AND UNAVOIDABILITY

Ward argues that even if the cracks in the concrete foundation were open and obvious, they were effectively unavoidable and, therefore, summary disposition should have been denied. She argues that the risk was unavoidable because her only other options were to skip dinner or skip the wedding as a whole. We disagree. The trial court did not err by granting summary disposition because the cracks in the concrete floor had no special aspects and were not effectively unavoidable.

Generally, "a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich at 517. An open and obvious danger is unreasonably dangerous if it is effectively unavoidable, or if it presents a high risk of severe harm. *Id*. at 518. But "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id*. at 519. The *Lugo* Court provided two examples demonstrating this concept: (1) "a commercial building with only one exit for the general public where the floor is

covered in standing water;" and (2) "an unguarded thirty foot deep pit in the middle of a parking lot." *Id.* at 518. Regarding the first example, the *Lugo* Court observed that "a customer wishing to exit the store must leave the store through the water" and, thus, the open and obvious condition is effectively unavoidable. *Id.* The second example presented "such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id.*

Ward concedes that this case does not involve a danger that presents a high risk of severe harm. Thus, the question is whether the alleged danger was effectively unavoidable. A hazard is effectively unavoidable when it is "essentially inescapable." *Stimpson v GFI Mgmt Servs, Inc*, 498 Mich 927, 927; 871 NW2d 207 (2015), citing *Hoffner*, 492 Mich at 468-469. "Effective unavoidability is characterized by 'an inability to be avoided, an inescapable result, or the inevitability of a given outcome.' " *Stimpson*, 498 Mich at 927, quoting *Hoffner*, 492 Mich at 468-469.

In support of her argument, Ward relies on *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328; 968 NW2d 397 (2021), but that reliance is misplaced. *Livings* involved an employee's decision to enter a workplace despite hazardous weather conditions. *Id.* at 333-334. The *Livings* Court held that, under some conditions, "an open and obvious hazard can become effectively unavoidable if the employee confronted it to enter his or her workplace for work purposes." *Id.* at 345. The Court stressed that the "overall analysis centers on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness." *Id.* (citations omitted). Ward notes the *Livings* Court's reference to the Second Restatement of Torts, which provides that "a possessor of land is not liable for injuries caused to invitees 'by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.' " *Id.* at 340, quoting 2 Restatement Torts, 2d, § 343A, p 218. Relying on *Livings* and its reference to the Second Restatement of Torts, Ward argues that the question is whether Misty Valley should have anticipated the harm to Ward by the crack. Ward asserts that "[i]t would defy logic to suggest that" Misty Valley "would fail to anticipate that a female invitee would wear high heels to the venue," and noted that evidence suggested Misty Valley "at least recognized the potential need to repair the dangerous cracks in its floor." Thus, Ward argues that Misty Valley "should have anticipated that female invitees attending weddings at Misty Valley would be forced to confront the cracks."

*Livings* is distinguishable because it involved an employee falling as she attempted to cross a snow- and ice-covered parking lot to get to her job. *Livings*, 507 Mich at 332-333. In *Livings*, our Supreme Court held that "an open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes." *Id.* at 333. The *Livings* Court explained that when deciding whether a hazard is effectively unavoidable, "courts addressing this issue should consider whether a reasonable person in the plaintiff's circumstances would have used any available alternatives to avoid the hazard." *Id.* at 349. In *Livings*, the Court concluded that the defendant's suggestion, that the plaintiff "could have left and returned when the condition had resolved or simply waited in her car until that time," was "tantamount to skipping work" and were "not reasonable alternatives." *Id.* at 348. Ward acknowledges that the *Livings* decision is narrow and "applie[s] only to situations where a plaintiff must confront an open and obvious hazard at her place of employment for work purposes . . . ."

But she posits that the reasoning applied to reach the "reasonable alternative" conclusion is "instructive."

Ward's situation was different. Putting aside the fact that the plaintiff in *Livings* was trying to get from her car to work, where Ward was trying to get from the buffet line to a seat, Ward had numerous alternatives available to her that are otherwise unavailable to an employee trying to get to or from their job. First, Ward could have returned to her table using the same path she used to safely arrive at the buffet line. To counter this suggestion, Ward notes that caterers directed the buffet-line traffic and, thus, it was "highly unlikely" and "almost impossible" for her to take the same path she used to get to the buffet line because she would disrupt the flow of traffic and bump into or "constantly cross[] paths with other buffet goers." This is not the same as effective unavoidability. Our Supreme Court has said that an effectively unavoidable hazard is "essentially inescapable" and is characterized, in part, by an "inability to be avoided . . . ." *Stimpson*, 498 Mich at 927 (quotation marks and citation omitted). Ward could have also removed her shoes or worn flat shoes and removed the risk of her heel getting stuck in the crack, something that several attendees did, as documented by Ward's exhibits. A reasonable person in Ward's circumstances thus had several reasonable alternative options available, and her situation is not comparable to that encountered by the plaintiff in *Livings*.

Ward appears to argue that a special aspect arose by virtue of her shoe choice, asserting that female wedding attendees are known for wearing high-heeled shoes and, at a wedding venue with cracks in the foundation, this poses an unreasonable risk of harm. Defendants challenge that argument, arguing that a special aspect relates to a condition of the premises, not an individual's shoe choice, so her high-heeled shoes could not qualify as a special aspect. In her reply brief, Ward seems to concede that the shoes themselves are not special aspects, but notes that the situation as a whole presented special aspects, and that it would be unreasonable for her to consider walking barefoot in the barn venue. Ward's contention that it would be unreasonable for her to consider walking barefoot is contradicted by her own exhibits, which show at least two barefoot attendees.

Finally, to the extent Ward argues that defendants had notice of the alleged dangerous condition and owed her a duty to warn her of the danger and fix the issue, she is mistaken. A premises possessor may be subject to liability for a breach of the duty of ordinary care owed to invitees "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner*, 492 Mich at 460. That is, a plaintiff must establish that the premises possessor had actual or constructive notice of the supposed hazardous condition to demonstrate a breach of duty. Here, however, there was no genuine issue of material fact that defendants had no duty because the crack in the floor was open and obvious. The question of whether defendants had notice of the crack in the floor is, therefore, irrelevant. Her premises liability claim fails because defendants were entitled to summary disposition in their favor under the element of duty, without reaching notice. See *Hoffner*, 492 Mich at 460; *Lowrey*, 500 Mich at 7.

III. CONCLUSION

For the reasons stated above, we conclude that the trial court did not err by granting summary disposition on Ward's premises liability claim. Ward has abandoned her argument regarding her negligence and nuisance claims; therefore, we need not address them.[2] We affirm.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron
/s/ Noah P. Hood

---

[2] Ward failed to address defendants' arguments regarding these claims in the trial court. Neither issue is discussed or analyzed in her appellate briefs and, thus, she has abandoned the issues. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) ("[A]n appellant's failure to properly address the merits of [her] assertion of error constitutes abandonment of the issue.") (Quotation marks, citation, and alteration omitted). Further, both issues are waived because neither were raised in Ward's statement of questions presented. See *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019) (finding an issue waived because the plaintiff failed to include it in his statement of questions presented); MCR 7.212(C)(5). Because Ward has abandoned and waived these issues, we decline to address them.